# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

v.

ROBERT HUNTER BIDEN,

*Defendant-Appellant.*

On Appeal from the United States District Court for the District of Delaware,
No. 1:23-cr-00061-MN-1

## APPELLANT'S RESPONSE TO THIS COURT'S APRIL 17, 2024 ORDER
## FOR JURISDICTIONAL BRIEFING

ABBE DAVID LOWELL
  *Counsel of Record*
CHRISTOPHER D. MAN
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
(202) 282-5000
ADLowell@winston.com
CMan@winston.com

*Counsel for Defendant-Appellant Robert Hunter Biden*

April 29, 2024

**INTRODUCTION**

Biden files this response to the Clerk's April 17, 2024 Order noting, "[t]he orders on appeal may not be final and may not otherwise be appealable at this time" and requesting "written responses" on this issue.[1]  D.E.2.  As explained below, jurisdiction exists under 28 U.S.C. §§1291, 1292(a), 1651, and pendent appellate jurisdiction.[2]

**I.  APPELLATE JURISDICTION EXISTS OVER BIDEN'S CHALLENGE TO THE SPECIAL COUNSEL'S APPOINTMENT AND APPROPRIATIONS CLAUSE VIOLATION**

Biden moved to dismiss the indictment and enjoin Special Counsel David Weiss from funding his investigation and prosecutions because he was unlawfully appointed as Special Counsel and the funding for this prosecution violates the Appropriations Clause because he is relying upon an inapplicable appropriation. Because the whole purpose of appointing a Special Counsel is to cure the appearance of an internal conflict of interest within the U.S. government, DOJ regulations

_____

[1] This response also addresses the Special Counsel's motion to dismiss the appeal, filed on April 19, 2024. D.E.9.

[2] The Special Counsel notes that Biden's counsel said during a telephone status conference with the district court on March 13, 2024—before any of the rulings on the motions to dismiss were issued—that he was "not a hundred percent sure" whether Biden could take an interlocutory appeal.  D.E.9 at 2.  Biden's counsel was not "a hundred percent sure" then because he did not know the bases for any yet-to-be-issued orders and, therefore, the appealability of those orders had not yet been researched.  Once the issue was carefully examined, Biden appealed because his counsel determined the issues were appealable on an interlocutory basis.

1

specify: "The Special Counsel *shall* be selected from *outside* the United States Government." 28 C.F.R. §600.3 (emphasis added). This regulation renders Weiss ineligible to serve as Special Counsel because he is the current U.S. Attorney for the District of Delaware. The Supreme Court found a closely analogous regulation for the appointment of the Watergate Special Prosecutor regulation binding in *United States v. Nixon*, 418 U.S. 683 (1974), a seminal case on agency law which the district court failed to even mention.[3]

Relatedly, the Special Counsel has improperly funded his investigation and prosecution of Biden through an appropriation that is applicable only to "independent counsel,"[4] which is not applicable to him because he is in no sense independent of the very DOJ in which he serves as U.S. Attorney. When an Executive Branch official spends government money in the absence of an

---

[3] If the district court were correct and the Attorney General can disregard such regulations, *Nixon* was wrongly decided and America's post-Watergate history would be much different. The Special Counsel's invocation of *United States v. Morales*, 682 F. App'x 690 (10th Cir. 2017), is puzzling as the case was not addressed below and is irrelevant. The Special Counsel misstates that the Petite policy at issue in *Morales* was an "internal departmental regulation." D.E.9 at 10. It is merely a loosely-worded guideline memorandum. *Morales* is irrelevant and certainly cannot overrule *Nixon*.

[4] The Special Counsel acknowledges his reliance upon an appropriation that provides: "[A] permanent indefinite appropriation is established within the Department of Justice to pay all necessary expenses of investigations and prosecutions by *independent counsel* appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law." Note to 28 U.S.C. §591 (emphasis added).

appropriation by Congress, it violates separation of powers principles and the Appropriations Clause. U.S. Const. art. I, §9, cl. 7 ("No money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."); *see also* 31 U.S.C. §1301(d) ("A law may be construed to make an appropriation out of the Treasury . . . only if the law specifically states that an appropriation is made."). Accordingly, Biden sought dismissal and an injunction preventing the government from funding the prosecution against him under the Appropriations Clause. *United States v. Biden*, No. 23-cr-00061-MN (D. Del.), Del.D.E.62 at 21; Del.D.E.80 at 16; *see also* Del.D.E.72 at 24 (*Special Counsel* arguing Appropriations Clause challenges are "'best seen as requests for injunctions'" and the "overwhelming weight of authority" is that injunctive relief is the preferable remedy) (quoting *United States v. Bilodeau*, 24 F.4th 705, 711 n.6 (1st Cir. 2022)); Del.D.E.80 at 17 (Biden agreeing to injunctive relief as possible remedy).

### A. Denial Of Injunctive Relief For The Appropriations Clause Violation Is Appealable Under 28 U.S.C. §1292(a)(1)

Denial of injunctive relief for Appropriations Clause violations is appealable under 28 U.S.C. §1292(a)(1): "the courts of appeals shall have jurisdiction of appeals from . . . Interlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions." That provision is plainly applicable.

Although injunctive relief is rarely sought in criminal cases concerning the Appropriations Clause, all Courts of Appeals decisions to have considered the question are unanimous that Section 1292(a)(1) confers interlocutory appellate jurisdiction over such orders. *See Bilodeau*, 24 F.4th at 712; *United States v. Pisarski*, 965 F.3d 738, 743 (9th Cir. 2020) (affirming injunction); *United States v. Campbell*, 820 F. App'x 596 (9th Cir. 2020); *United States v. Evans*, 929 F.3d 1073, 1076 (9th Cir. 2019); *United States v. Gilmore*, 886 F.3d 1288, 1290 (9th Cir. 2018); *United States v. Zucker*, 743 F. App'x 835, 836–37 (9th Cir. 2018); *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016). There is no reason to believe this Court would deviate and create a circuit split on this issue, particularly when the language of Section 1292(a)(1) is clear.

### B. Section 1292(a)(1) Confers Jurisdiction To Consider Whether The Special Counsel Was Lawfully Appointed

Section 1292(a)(1) jurisdiction over the Appropriations Clause injunction includes the antecedent question of whether Weiss was lawfully appointed Special Counsel. Despite being a DOJ official, Weiss claims his additional Special Counsel title renders him an "independent counsel," so the Court needs to determine if he was validly appointed. (Del.D.E.72 at 9.) Referring to Section 1292(a)(1), the Third Circuit explains: "We have adopted a broad view of appellate jurisdiction under this section." *OFC Comm Baseball v. Markell*, 579 F.3d 293, 298 (3d Cir. 2009). Quoting a leading treatise, the Court explained: "Jurisdiction of the interlocutory

appeal [under § 1292(a)(1)] is in large measure jurisdiction to deal with all aspects of the case that have been sufficiently illuminated to enable decision by the court of appeals without further trial court development." *Id.* (quoting 16 Charles Alan Wright et al., Fed. Prac. & Proc. § 3921.1, at 28 (2d ed. 1996)).

This Court explains that its "interlocutory jurisdiction under § 1292(a)(1) encompasses matters 'inextricably linked' with the issuance of a permanent injunction. Applying this standard, we have previously reviewed summary judgment orders that made the determination of liability necessary for the issuance of a permanent injunction." *TD Bank N.A. v. Hill*, 928 F.3d 259, 269 (3d Cir. 2019) (citing cases); *see Consol Pa. Coal Co., LLC v. Mahalaxmi Cont'l Ltd.*, 2024 WL 510518, at *2 (3d Cir. Feb. 9, 2024) (jurisdiction exists to consider personal jurisdiction necessary to issue an injunction). With respect to such intertwined issues, "the appellate court has no choice: any more limited review would deprive the appellant of his or her congressionally mandated right to a section 1292(a)(1) interlocutory appeal." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 449 (3d Cir. 1982) (en banc). As this Court correctly noted, the Supreme Court follows this approach. *Markell*, 579 F.3d at 299–300 (discussing *Thornburgh v. Am. Coll. of Obstetricians & Gynecologists*, 476 U.S. 747, 757 (1986), reviewing the underlying constitutional claim in an appeal concerning injunctive relief).

Reviewing the validity of the Special Counsel's appointment is warranted because it "presents 'a pure question of law' that is 'intimately related to the merits of the grant [or denial] of preliminary injunctive relief.'" *Id.* at 300 (citations omitted; alterations in original). Whether Weiss's office is entitled to use federal funds under an "independent counsel" appropriation turns, in part, on whether he was lawfully appointed as Special Counsel in the first place.

## C.  Appellate Jurisdiction Exists Over The Appropriations Clause and Unlawful Appointment Issues Under 28 U.S.C. §1291

The Supreme Court explains: "Our precedents have long permitted private parties aggrieved by an official's exercise of executive power to challenge the official's authority." *Seila L. LLC v. CFPB*, 591 U.S. 197, 212 (2020). Although this harm of being subject to unauthorized government actions "may sound a bit abstract[,] . . . this Court has made clear that it is 'a here-and-now injury.'" *Axon Enterp., Inc. v. FTC*, 598 U.S. 175, 191 (2023) (quoting *Seila*, 591 U.S. at 212). To state a viable claim, it is "sufficient that the challenger sustains injury from an executive act that allegedly exceeds the official's authority." *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (quoting *Seila*, 591 U.S. at 211); *see also Seila*, 591 U.S. at 211 ("We have held that a litigant challenging governmental action as void on the basis of the separation of powers is not required to prove that the Government's course of conduct would have been different in a 'counterfactual world' in which the Government had acted with constitutional authority.").

Biden's challenge to the Special Counsel's authority, both in terms of Weiss' appointment and appropriated funding, is collateral from the merits. *See, e.g.*, *Free Enterp. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010) ("But petitioners object to the Board's existence, not to any of its auditing standards. Petitioners' general challenge to the Board is 'collateral' to any Commission orders or rules from which review might be sought."). Biden raised "a claim about subjection to an illegitimate proceeding" and it is "being subjected" to the proceeding initiated by the Special Counsel that is his injury, as opposed to "any specific substantive decision" rendered through those proceedings. *Axon Enterp.*, 598 U.S. at 189, 191. The Supreme Court found this sort of collateral order analogous "to our established immunity doctrines," explaining, "[t]here, we have identified certain rights 'not to stand trial' or face other legal processes." *Id.* at 192. This injury "is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Id.* at 191. No matter what the outcome would be at trial, "as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone. Judicial review . . . would come too late to be meaningful." *Id.*

Accordingly, Biden's challenges are sufficient to create jurisdiction under the collateral order doctrine, because the orders are "(1) conclusive, (2) resolve important questions completely separate from the merits, and (3) would render such

important questions effectively unreviewable on appeal from final judgment in the underlying action." *In re NFL Players' Concussion Inj. Litig.*, 2023 WL 7099271, at *2 (3d Cir. Oct. 27, 2023) (citation omitted); *see also Shoop v. Twyford*, 596 U.S. 811, 817 n.1 (2022) (creating new category of collateral orders). The district court's order is conclusive, the questions concerning the Special Counsel's authority are collateral from the merits of the prosecution, and Biden's injury in being forced to stand trial based on an unauthorized prosecution and with improperly spent funds is effectively unreviewable on appeal after a final judgment (particularly if he is acquitted and has no right to appeal at all).

II. **APPELLATE JURISDICTION EXISTS OVER BIDEN'S MOTION TO DISMISS THE INDICTMENT PURSUANT TO THE DIVERSION AGREEMENT**

Biden moved to dismiss under a Diversion Agreement signed by all parties in which Biden would not be prosecuted if he maintained his sobriety and complied with other conditions imposed by that Agreement.

### A. Appellate Jurisdiction Exists Over The Diversion Agreement Issues Under 28 U.S.C. §1291

Biden's effort to enforce the Diversion Agreement must be reviewed now or the very purpose of that Agreement, the diversion of a criminal prosecution, will be forever lost. As such, this issue satisfies the collateral order doctrine because the denial is (1) conclusive, (2) involves an issue collateral from the merits of the prosecution, and (3) is effectively unreviewable upon appeal of a final judgment.

The Supreme Court held an appeal of a denied motion to dismiss under the Fifth Amendment's Double Jeopardy Clause is immediately appealable because it is a right not to be tried, *Abney v. United States*, 431 U.S. 651, 659–63 (1977); the denial of the right not to be prosecuted under the Diversion Agreement is no different. The promises made in such agreements are enforceable under the Fifth Amendment's Due Process Clause. *See, e.g.*, *Santobello v. New York*, 404 U.S. 257, 262 (1971). Therefore, the Special Counsel is wrong when he seeks to minimize the immunity conferred by the Diversion Agreement as arising under a mere contract as opposed to a constitutional guarantee. D.E.9 at 6. The Due Process Clause, on which Biden relies, is in the same Fifth Amendment as the Double Jeopardy Clause. There is no reason why the two clauses in the same Amendment should be applied differently when both recognize the procedural fairness in not being improperly tried. If the government is allowed to prosecute this case, the "diversion" in the Diversion Agreement is forever lost, regardless of the outcome of any trial.

Rattling off various types of agreements that *some* Courts of Appeals have held do not create a right not to be tried (with diversion agreements notably absent from that list), the Special Counsel erroneously claims that "all Circuit Courts" (D.E.9 at 6) have rejected the conclusion that the denial of enforcement of those agreements are appealable collateral orders. Not so. The Ninth Circuit (where the same legal issues in this case are on appeal) allows appeals from denied claims of

immunity under plea agreements. *See United States v. Morales*, 465 F. App'x 734, 736 (9th Cir. 2012) ("We also have jurisdiction over interlocutory appeals of orders denying a motion to dismiss an indictment on the ground that it was filed in breach of a plea agreement."); *United States v. Sandoval–Lopez*, 122 F.3d 797, 799–800 (9th Cir. 1997) ("As in the case of its ruling that double jeopardy does not apply, the district court's conclusion that the government is not barred by the plea agreements from subjecting the defendants to trial on the drug counts because they breached or repudiated those agreements 'constitute[s] a complete, formal, and, in the trial court, final rejection' of their claim, the elements of the claim 'are completely independent of [the defendants'] guilt or innocence,' and the defendants' rights would be 'significantly undermined if appellate review . . . were postponed until after conviction and sentence.'") (quoting *Abney*, 431 U.S. at 659–61).[5]

---

[5] The Special Counsel cites *United States v. Solano*, 605 F.2d 1141 (9th Cir. 1979), an earlier case than *Morales* and *Sandoval-Lopez*, but *Solano* does not undercut these later cases. D.E.9 at 7. In *Solano*, the Ninth Circuit did have jurisdiction over an *Abney* double jeopardy claim, but it rejected the defendant's request for the "court to exercise its inherent supervisory power over district court proceedings," to review a claim under a plea agreement explaining: "Insofar as such arguments do not directly invoke the Double Jeopardy Clause, they are not properly the subject of an *Abney* appeal and we decline to consider them at this stage of the proceedings." *Id.* at 1142; *see id.* at 1143 ("because claims relating to allegedly violated plea bargains are not strictly based upon the Double Jeopardy Clause, we will not consider such arguments in a pre-trial *Abney* appeal"). *Solano* stands only for the proposition that the Ninth Circuit will not use its inherent supervisory authority to review a claim of immunity under a plea agreement during an *Abney* appeal. The later cases of *Morales* and *Sandoval-Lopez* show the Ninth Circuit will review such claims under the collateral order doctrine. The Special Counsel's citation to *United States v.*

In any event, none of the cases cited by the Special Counsel arise in the context of a diversion agreement, which is different from the immunity conferred by a plea agreement. The "diversion" in such agreements is a diversion from the path of prosecution, in which a defendant incurs certain obligations (e.g., maintaining sobriety). While the immunity in a plea agreement has been construed by some courts as immunity from conviction, as opposed to prosecution, Biden's Diversion Agreement specifically states, under the heading "Agreement Not to Prosecute," that "[t]he United States agrees not to criminally prosecute Biden. . . ." (¶15.) That is the "promise [that] must be fulfilled," *Santobello*, 404 U.S. at 262, and the right not to be prosecuted is forever lost if there is a trial, whether that trial results in conviction or acquittal. In this sense, a diversion agreement is more akin to cases where the prosecution of minors is diverted to the juvenile justice system, the denial of which is an appealable collateral order. *See, e.g.*, *Impounded*, 117 F.3d 730, 733 (3d Cir. 1997); *Gov't of V.I. in Int. of A.M.*, 34 F.3d 153, 156 (3d Cir. 1994) (noting the D.C., Fourth, Eighth and Eleventh Circuits agree); *United States v. Mendez*, 28 F.4th 1320, 1323–24 (9th Cir. 2022); *In re Sealed Case*, 131 F.3d 208, 210 (D.C.

---

*Dederich*, 825 F.2d 1317, 1321 (9th Cir. 1987), *overruled*, *United States v. Taylor*, 881 F.2d 840, 841 (9th Cir. 1989), involving a "state grant of immunity" is no better. D.E.9 at 7. Biden's case has nothing to do with immunity conferred by a separate sovereign. Moreover, Judge Reinhardt authored *Sandoval-Lopez*, authorizing review of a breach of a plea agreement claim as a collateral order, also was on the panel in *Dederich*. Yet, he makes no mention of *Dederich* in *Sandoval-Lopez* because the case is irrelevant to the collateral order issue.

Cir. 1997) (Garland, J., on panel); *United States v. Doe*, 49 F.3d 859, 865 (2d Cir. 1995).

The Special Counsel is correct that there is a circuit split on the appealability of alleged plea agreement breaches (not diversion agreements), but the viability of a collateral order in that context is an open issue in the Third Circuit. The Special Counsel citing *dicta* in *Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 186 (3d Cir. 2006), a case that arose in a different context, is not controlling and the Court has not repeated it in the subsequent eighteen years. In any event, given the existence of a circuit split on plea bargain breach issues, the absence of controlling precedent in this Circuit, and the difference with diversion agreements, Biden raises more than a colorable argument as to this Court's jurisdiction that should be considered by the merits panel. Ultimately, the Supreme Court may need to resolve this circuit split.

### B. Mandamus Jurisdiction Exists Over The Diversion Agreement Issues

Mandamus relief to enforce the Diversion Agreement is appropriate under 28 U.S.C. §1651. If appellate jurisdiction is found lacking, the Third Circuit will grant mandamus relief when appropriate. *See, e.g.*, *In re Nwanze*, 242 F.3d 521, 524–25 (3d Cir. 2001) (explaining the Clerk of the Court identified a jurisdictional error, but a motions panel found mandamus jurisdiction could be present and merits panel granted mandamus relief); *Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 773 (3d Cir. 1984) (Becker, J.) (treating appeal as a petition for mandamus after concluding there

was no collateral order); *see also Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 379 (2004) (other avenues of relief should be pursued before seeking mandamus).

Mandamus is warranted when a party establishes that "(1) 'no other adequate means [exist] to attain the relief he desires,' (2) the party's 'right to issuance of the writ is 'clear and indisputable,''' and (3) 'the writ is appropriate under the circumstances.'" *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (quoting *Cheney*, 542 U.S. at 380–81 (alterations in *Perry*)). Mandamus is appropriately used "to confine an inferior court to a lawful exercise of its prescribed jurisdiction," and a "clear abuse of discretion" must be shown. *Cheney*, 542 U.S. at 380 (citations omitted).

The district court clearly abused its discretion here. The dispute is narrow. All parties signed the Diversion Agreement and agree the prosecution below is barred by the Agreement's immunity provision, if the Agreement is in effect, but they dispute whether the Agreement is in effect.

The debate is over the meaning of an unsigned signature line for Probation marked "APPROVED BY," when Probation is not a party to the Agreement and no term of the Agreement requires Probation to do anything. The first paragraph of the Diversion Agreement identifies the Parties as solely the prosecution and Biden, with no mention of Probation. The second paragraph says the Agreement is effective upon "execution and approval" of the Agreement. There is no mention of Probation

in either paragraph, and no Agreement paragraph requires approval from Probation. Biden must agree to supervision by Probation, but Probation is not required to do anything. The question is whether the signature line gives Probation veto power over the Agreement by the Parties, rather than approving its supervisory authority.

Biden argues it is plain that when the Agreement identifies the "Parties" and then uses the approved and executed language, it means approved and executed by the Parties. It cannot mean "approved" by Probation, which is not even mentioned at that point in the Agreement. Moreover, all contracts must be "approved" by the parties and, while that alone can form a contract (i.e., oral contracts), an agreement that specifies "execution" requires the parties' signatures. Probation's signature is merely an acknowledgment that *it* "approves" its supervisory authority. By contrast, the Special Counsel argues Probation's approval was an unsatisfied condition precedent to the formation of a contract. The district court below adopted the Special Counsel's position.

A California court reviewed the same Diversion Agreement and came to a completely different conclusion than the court below. *United States v. Biden*, No. 2:23-cr-00599-MCS, Cal.D.E.67 (C.D. Cal. Apr. 1, 2024). Because no condition precedent language exists in the Diversion Agreement, that court appropriately ruled—directly contrary to the court below—that "[t]he Government offers no persuasive argument that procuring the Probation Officer's signature was a condition

precedent to the agreement's formation." *Id.* at 17. It also is illogical to claim that Probation's approval of the Agreement is necessary because Paragraph 19 of the Agreement allows the Parties to revise the Agreement (expanding or eliminating any role for Probation) through the signature of the Parties alone. *Id.* at 16–17. There is no reason to require Probation's approval of the Agreement if the Parties can then re-write the Agreement without Probation's approval. (*See also* 7/26/23 Tr. at 46 ("I believe that this is a bilateral agreement between the parties that the parties view in their best interest. I don't believe that the role of probation would include weighing whether the benefit of the bargain is valid or not from the perspective of the United States or the Defendant.") (Special Counsel).)

Thus, unlike the lower court that found the Diversion Agreement never went into effect, Judge Scarsi concluded the Agreement *is* in effect among the parties. However, he *sua sponte* decided, over the objection of all parties, that approval by Probation was a condition precedent to performance, concluding the Diversion Period in the Agreement would not begin until Probation signed, so the prosecution's obligation not to prosecute had not yet arisen. Judge Scarsi is wrong because the prosecution's obligation not to prosecute is independent of the Diversion Period. Cal.D.E.67 at 19–20.[6] Judge Scarsi characterizes his reading as a "Schrödinger's

---

[6] Biden agrees with Judge Scarsi that none of the language denoting a condition precedent to formation exists and that a contract *does* exist between the parties. However, both Biden and the Special Counsel rejected Judge Scarsi's suggestion of

cat-esque construction" in which the Agreement simultaneously appears both dead and alive. *Id.* at 20. There is no better way to say the agreement is ambiguous.

While Biden believes the court below erred in not adopting his construction of the Diversion Agreement, it clearly erred in applying the wrong standard. Biden briefed numerous cases holding that any ambiguity in such agreements must be construed against the government.[7] The Court ignored them all. The Special

_____

a condition as precedent to performance. Even if Probation's approval is a condition precedent to performance, Judge Scarsi reached the wrong conclusion as to Biden's immunity from prosecution. In Judge Scarsi's view, the two-year Diversion Period would not begin until Probation signed (after that period ended, the Special Counsel would dismiss the indictment). If true, the Diversion Period has not begun and the clock for the Special Counsel to dismiss the indictment has not run either. The Agreement's immunity provision, however, is not tied to the Diversion Period. It is part of the Agreement already in existence between the parties, beginning in this instance before Probation signs the Agreement, and it will exist after the Diversion Period expires. To read the Agreement otherwise would render the government's promise of immunity illusory. If the Diversion Period had promptly started and been completed within two years, the statute of limitations would not have run for some possible offenses. Thus, if immunity were tied to the Diversion Period, the immunity would be only a temporary reprieve for Biden and he could still be prosecuted after he successfully completed the Diversion Period. Such a reading is nonsensical because it would not provide certainty that no charges would be filed when Biden completed his conditions.

[7] Del.D.E.60 at 10–11:

> The Third Circuit explains: "In line with general principles of contract interpretation, we typically construe ambiguities against the government, given its customary role in drafting such agreements." *United States v. Yusuf*, 993 F.3d 167, 176 (3d Cir. 2021); *see United States v. Floyd*, 428 F.3d 513, 516 (3d Cir. 2005) ("Any ambiguities in the agreement must be construed in favor of the defendant; in 'view of the government's tremendous bargaining power [courts] will strictly construe the text against it when it has drafted the agreement.'") (quoting *United States v. Baird*, 218

Counsel agreed the Diversion Agreement is subject to the same standards of construction used in plea and similar agreements, as did the California court. Del.D.E.69 at 7–8; Cal.D.E.67 at 10. Nevertheless, the district court here ignored these *undisputed* principles and adopted an objective theory of contracts used by Delaware courts in *civil* contexts in which contracts are interpreted based on the views of a third-party reading the contract's language. Del.D.E.97 at 10–11. Applying that standard, the district court concluded the Diversion Agreement

---

F.3d 221, 229 (3d Cir. 2000)); *United States v. Rauso*, 548 F. App'x 36, 38 (3d Cir. 2013) ("We are mindful of the Government's 'tremendous bargaining power' and 'strictly construe the text [of the plea agreement] against [it].'") (quoting *Baird*, 218 F.3d at 229) (alterations in *Rauso*); *see United States v. Saferstein*, 673 F.3d 237, 243 (3d Cir. 2012) ("[Plea agreements must be construed to protect the defendant as the weaker bargaining party."); *United States v. Hodge*, 412 F.3d 479, 485 (3d Cir. 2005) ("The government must 'adhere strictly to the terms of the bargains it strikes with defendants.' Because defendants entering pleas forfeit a number of constitutional rights, 'courts are compelled to scrutinize closely the promise made by the government in order to determine whether it has been performed.'") (citations omitted). Additionally, the prosecution will be found to have breached an agreement if the defendant could reasonably believe that an agreement has been breached. *See, e.g.*, *United States v. Shelton*, 91 F. App'x 247, 248 (3d Cir. 2004) ("[T]he government committed a breach if its actions were inconsistent with the text of the Agreement or did not comport with what Shelton could reasonably have understood to be the operative effects of the Agreement."). The Third Circuit has aggressively construed immunity provisions of such agreements for the benefit of defendants. *See United States v. Gebbie*, 294 F.3d 540 (3d Cir. 2002) (resolving ambiguity about term "United States" to mean all U.S. Attorney's Offices, including Offices that specifically declined to sign the agreement).

unambiguously required Probation's "explicit approval" as a condition precedent to the Agreement becoming effective, such that no contract exists.  *Id.* at 11.

The district court's conclusion that the Agreement *unambiguously* requires Probation to sign the contract as a condition precedent to formation defies reality. The district court had the benefit of Judge Scarsi's opinion reaching the direct opposite conclusion, which the district court acknowledged but dismissed as relying on California and Ninth Circuit law.  *Id.* at 14 n.5.  Judge Scarsi, however, relied upon the same law Biden cited to the court below about construing ambiguity in agreements against the government under identical Ninth Circuit standards. Moreover, Judge Scarsi found the law for construing plea agreements generally consistent across federal and state cases, so he did not rely upon any peculiar quirk in the Ninth Circuit.  Cal.D.E.67 at 11 n.4.

With at least three differing—and incompatible—views of the same Diversion Agreement in play and the district court below *rejecting* the view of the only other court to have considered the Agreement's meaning, it is impossible to view the Agreement as "unambiguous."  Judge Scarsi's analogy of the Agreement to a paradoxical Schrödinger's cat that somehow seems both alive and dead simultaneously highlights that there is room to view the Agreement differently.  To be sure, Biden believes the Agreement should be construed unambiguously in his favor, but the fact that Judge Scarsi *rejected* the lower court and Special Counsel's

condition precedent to formation theory means that it cannot be unambiguously

construed as the court below did.  Mandamus is warranted to correct this error.[8]

### C. Pendent Appellate Jurisdiction Exists Over The Diversion Agreement Issues

Pendent appellate jurisdiction is another basis for this Court to review this

claim.  "The exercise of pendent appellate jurisdiction is favored if it will 'likely

terminate the entire case, sparing both this court and the district court from further

proceedings and giving the parties a speedy resolution.'"  *KiSKA Constr. Corp.-*

*U.S.A. v. Wash. Metro. Area Transit Auth.*, 167 F.3d 608, 611 (D.C. Cir. 1999)

(citation omitted).  It is especially appropriate to decide a pendent issue that is "fairly

easy" when the principal issue poses "a difficult and complicated task."  *Id.*  The

---

[8] Mandamus is favored when an issue is important.  *See Cheney*, 542 U.S. at 382 (interference with government functions favors mandamus); *In re Landry*, 83 F.4th 300, 304–05 (5th Cir. 2023) (granting mandamus to protect elections).  Here, the Special Counsel rejected its plea and diversion agreements with Biden after an onslaught of political pressure from Congressional Republicans.  It is now clear, and the Special Counsel's filings acknowledge, that pressure was fueled by a Russian intelligence operation that sought to meddle in the U.S. presidential election to favor former President Trump over President Biden by encouraging the Special Counsel to prosecute the President's son before the election.  *See, e.g.*, *United States v. Smirnov*, 2:24-mj-00166-DJA, D.E.15 at 24 (D. Nev. Feb. 20, 2024) (Special Counsel seeking bail denial, emphasizing the role of the Russian intelligence operation).  Even though the Special Counsel now has indicted the Russian disinformation agent for lying about Biden, *United States v. Smirnov*, 2:24-cr-00091-ODW, D.E.1 (C.D. Cal. filed Feb. 14, 2024), it is doing exactly what Russia wanted by bringing two prosecutions against Biden and eagerly seeking to get them tried before the election.

Diversion Agreement immunity issue is straight forward and would conclusively resolve this case.

This Court has exercised pendent appellate jurisdiction in criminal cases in the past where issues could conclusively resolve even part of a case. *See United States v. Menendez*, 831 F.3d 155, 164 (3d Cir. 2016) (exercising pendent appellate jurisdiction over a separation of powers claim that concerned only some of the charges); *United States v. Maker*, 751 F.2d 614, 626 (3d Cir. 1984) (Becker, J.) (exercising pendent appellate jurisdiction over a severance order in a double jeopardy appeal). Even the government has sought exercises of pendent appellate jurisdiction in criminal cases in this Court. *See United States v. Bergrin*, 682 F.3d 261, 277 n.20 (3d Cir. 2012). The Court should exercise pendent jurisdiction here.

## III. APPELLATE JURISDICTION EXISTS OVER BIDEN'S SEPARATION OF POWERS CLAIM

### A. Appellate Jurisdiction Exists Over The Separation Of Powers Claim Under 28 U.S.C. §1291

Biden raises a rare separation of powers claim, but one that numerous Attorneys General, starting with Attorney General Robert Jackson, have recognized as viable. Del.D.E.63 at 16–20 (providing extensive quotes); *United States v. Mardis*, 670 F. Supp. 2d 696, 701 (W.D. Tenn. 2009), *aff'd*, 600 F.3d 693 (6th Cir. 2010); *see also D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1246–47 (D.C. Cir. 1972); *Pillsbury Co. v. FTC*, 354 F.2d 952 (5th Cir. 1966). The reason such

separation of powers claims are rare is because DOJ has historically refused to even discuss pending cases with Congress and has maintained the confidentiality of its case files on pending cases precisely because it could subject DOJ to criticism, as well as motions to dismiss any indictments it files, where Congress has overborn the Executive Branch's independent charging decision. Nevertheless, the current record demonstrates that is what happened here.

Republican Chairmen of three House Committees exploded in outrage when the Diversion Agreement and a proposed Plea Agreement (to tax charges not at issue here) were announced. The prosecution then promptly blew up the proposed Plea Agreement and claimed the Diversion Agreement that it signed was void, and these Chairmen publicly declared their victory in forcing the prosecution's hand. Del.D.E.63 at 3–4. After the Special Counsel indicted the gun charges in the case below, Congress took the unprecedented step of demanding the Special Counsel testify about his pending investigation and prosecution of Biden. Weiss complied and after being badgered by House Republicans for not more aggressively prosecuting Biden, the Special Counsel buckled again and indicted Biden a second time on nine tax charges (including felonies) in California. The House Chairmen claimed credit for this too. Del.D.E.63 at 4.

While the Special Counsel claims he did not cave under pressure and the House Chairmen are lying, the House Chairmen are more credible. When left to his

own judgment after a thorough, five-year investigation, Weiss proposed resolving the gun charges with a Diversion Agreement where Biden would not even be tried and a recommended no-jail-time Plea Agreement to two tax misdemeanors. Consequently, we know what Weiss initially deemed the correct resolution of this case absent this pressure from Congress. It was only after the House Chairmen demanded in summer 2023 that Weiss reverse course and charge felonies that he did so. The timing says it all and the House Chairmen said the quiet part out loud in admitting what they accomplished.

Separation of powers issues are collateral orders because the violation occurs when those lines are crossed, and a defendant caught in the crosshairs has an immediate injury. *See, e.g.*, *Collins*, 141 S. Ct. at 1780 ("[W]henever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge."); *Seila*, 591 U.S. at 211 (agency lacked authority challenge under the Appointments Clause); *Bond v. United States*, 564 U.S. 211, 220 (2011) (challenging indictment on federalism). As noted above, the Supreme Court in *Axon* recognized that separation of powers claims are collateral orders. 598 U.S. at 192–93.

This Court, too, has allowed collateral appeals of separation of powers claims. *See United States v. Whittaker*, 268 F.3d 185, 192 (3d Cir. 2001) (disqualifying prosecutors); *see also United States v. Williams*, 68 F.4th 564, 569–70 (9th Cir.

2023); *United States v. Bolden*, 353 F.3d 870, 874–78 (10th Cir. 2003); *United States v. Vlahos*, 33 F.3d 758, 761–62 (7th Cir. 1994); *United States v. Caggiano*, 660 F.2d 184, 189–90 (6th Cir. 1981).   Other Circuits have done so when the separation of powers issue concerned a claim of defendants being improperly charged.   *See United States v. Claiborne*, 727 F.2d 842, 844–45 (9th Cir. 1984); *United States v. Hastings*, 681 F.2d 706, 708 (11th Cir. 1982); *United States v. Myers*, 635 F.2d 932, 935 (2d Cir. 1980).   The Court has jurisdiction to hear Biden's claim under the collateral order doctrine.

The Special Counsel invokes *United States v. Cisneros*, 169 F.3d 763 (D.C. Cir. 1999), in claiming that not all separation of powers claims involve a right not to be tried, and an explicit constitutional guarantee of a right not to be tried is needed. D.E.9 at 13–14.   The *Cisneros* court was in no position to opine on which constitutional guarantees convey a right not to be tried, as that defendant's separation of powers claim did not rest upon any specific clause in the Constitution, just the mere fact that he allegedly lied as part of his appointment to a position in the Executive Branch.   169 F.3d at 766.   *Cisneros* does not address the Take Care Clause addressed by Biden.   U.S. Const., art. II, §3.   The language the Special Counsel quotes is *dicta*, it has never been followed by this Court, and it is no longer good law, after more recent Supreme Court cases, including *Axon*, say the opposite.   *See* 598 U.S. at 192–93.

The Supreme Court's subsequent *Axon* decision is a separation of powers case arising under the Appointment's Clause, which it found analogous "to our established immunity doctrines," explaining, "[t]here, we have identified certain rights 'not to stand trial' or face other legal processes."  598 U.S. at 192 (citations omitted).  The lack of power to act rendered the improperly appointed official's acts void, which is similar to Biden's separation of powers claim that rests on the Take Care Clause, a clause *Cisneros* says nothing about.  U.S. Const., art. II, §3.  If the Executive Branch's independent authority in making charging decisions is coerced by the Legislative Branch, those actions are equally void.

The Special Counsel's fixation on the explicitness of a right not to be tried proves too much, as the only constitutional provision that says that explicitly is the Double Jeopardy Clause.  The Special Counsel acknowledges the Speech or Debate Clause has been held to be a right not to stand trial (D.E.9 at 4), but the Clause does not say that explicitly.  Under the Special Counsel's explicitness test, the immunity conferred by the Speech or Debate Clause would not present a collateral order, but a right that could be vindicated only on a direct appeal from a conviction.

Obviously, courts take a more functional approach.  The Appointments Clause and Appropriations Clause, for example, do not specify how they apply in the criminal context, but if a violation deprives an official of the power to proceed, that would apply in all contexts.  In Biden's case, it is fundamental that the Executive

Branch is supposed to make charging decisions under the Take Care Clause, and if that independence is overborne by another Branch, that charging decision should be treated as void for the same reasons.

### B. Pendent Appellate Jurisdiction Exists Over The Separation Of Powers Issues

As noted above, this Court has exercised pendent appellate jurisdiction over separation of powers claims, even when they would dispose of only part of a case. *Menendez*, 831 F.3d at 164 ("we have pendent appellate jurisdiction over Senator Menendez's separation-of-powers claims"). The reason to do so here is all the more compelling because it would dispose of the entire case.

## CONCLUSION

This Court has jurisdiction over Biden's interlocutory appeal.

Dated: April 29, 2024

Respectfully submitted,

/s/ *Abbe David Lowell*
ABBE DAVID LOWELL
  *Counsel of Record*
CHRISTOPHER D. MAN
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
(202) 282-5000
ADLowell@winston.com
CMan@winston.com

*Counsel for Defendant-Appellant Robert Hunter Biden*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing appellate brief was filed electronically on April 29, 2024, and will, therefore, be served electronically upon all counsel.

/s/ *Abbe David Lowell*
Abbe David Lowell

**CERTIFICATE OF COMPLIANCE**

This document was filed in response to the Court's April 17, 2024 Order calling for briefing concerning its jurisdiction. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Rule 32(f), this document contains 6,532 words. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), Third Circuit Rule 32.1, and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word for Microsoft 365 MSO.

/s/ *Abbe David Lowell*
Abbe David Lowell